HENRY HARRIS ET AL. *v.* ELIZABETH REED ET AL.

1. SUIT FOR PARTITION—PLEADINGS.—In a suit, by children of a former marriage against the widow and children of the second marriage, for partition, when it is admitted in the petition that the property is community, no issue can arise. as to whether the property was community or separate property.

2. SAME—PROPERTY EXEMPT.—In such a suit, the homestead, and property exempt from forced sale, will not be taken into partition.

3. ADVANCEMENTS, WHEN CHARGEABLE.—When land has been con-

veyed, by deed, as an advancement, and, on partition, the heir seeks to show that the advancement was previously made by parol for the purpose of reducing the amount to be charged, the date of the deed will be taken as the date of the advancement, in the absence of satisfactory evidence of the prior parol gift.

4. RECEIPTS—EVIDENCE OF PAYMENT.—It was not error, in such a case, to allow the widow and others (defendants) to testify to payments made, of debts of the estate, without their producing receipts.

5. CONFLICT OF TESTIMONY.—Where the evidence upon the material issues is directly conflicting, and each side well sustained by testimony, the verdict will not be set aside.

APPEAL from Bell. Tried below before Hon. J. P. Osterhout.

This was a suit brought by Sabrina Harris and her husband, Mrs. Lucy M. Hendricks and husband, Charles L. Hendricks, Edward T. Reed, and Elizabeth Berry and husband, Thomas R. Berry, and the widow and children of Michael Reed, deceased, against Elizabeth Reed, widow, and John M., Francis B., Mollie, Sallie Lee, Davis B., and Lilly Reed, children of said Elizabeth Reed, for partition of the estate of John B. Reed, deceased. The plaintiffs were children of a former marriage, and claimed partition against the children of the second marriage and their mother, of "a large estate of community, real, and personal property," consisting of a tract of 1,137 acres land, money, horses, cattle, hogs, &c.

The testimony showed that John B. Reed married in Tennessee, Elizabeth Truit, the ancestor of plaintiffs, and removed to Mississippi, where she died in 1849, leaving plaintiffs, Mrs. Harris, Hendricks, Berry, Michael, (whose descendants are plaintiffs,) and E. T. Reed, her heirs. Elizabeth Truit Reed received from her father and his estate several valuable slaves and some money. Her husband was poor at their marriage. About six months after the death of Elizabeth Truit Reed, John B. Reed intermarried with the defendant Elizabeth Harris, and soon thereafter the family moved to Texas, bringing with them fifteen or twenty negroes,

the same and descendants of those received from the father of the first Mrs. Elizabeth Reed, and several thousand dollars money, the proceeds of the labor of the slaves so received by the first wife from her father's estate.

On their arrival they settled on a tract of about 2,000 acres in Bell county, which the father of John B. Reed, supposing himself to own, had given his son. From time to time, and as early as in 1850, John B. Reed gave to his children by his first wife, by parol, each about 200 acres of this tract so received from his father. The value, at the date the possession of the several advancements was taken, of the land was but nominal, the country being on the frontier of Texas. The entire tract, however, conflicted with the eleven-league grant in name of Maximo Morino, which finally was adjudged superior to the Reed title; and in 1865, John B. Reed bought in the Maximo Morino title for the entire tract, at five dollars per acre. On perfecting his title, he either deeded or caused deeds to be executed to his children for the lands he had theretofore allowed to them; the lands in 1865 costing him about $2,000 for each of the children to whom he deeded land.

There was much conflict of testimony as to the value of the home tract of land, of about 1,137 acres, sought to be partitioned, the witnesses for plaintiffs placing it at twenty-five dollars per acre, and witnesses for defendants at ten dollars.

The plaintiffs' witnesses also testified to facts showing that the deceased left from $20,000 to $25,000 in money, principally gold coin, at his death: the defendants allowed only a small sum—between two and three thousand dollars—which they also established by testimony.

The other proceedings had in the court below are sufficiently shown in the opinion. The jury found a verdict for defendants. A motion for new trial was overruled, and defendants appealed. Before the trial below, two of the plaintiffs withdrew from the suit.

*X. B. Saunders* and *A. D. McGinnis*, for appellant.

*Sleeper, Jones & Kendall* and *James Boyd*, for appellees.

ROBERTS, CHIEF JUSTICE.—This is a suit for a partition of an estate, there being, at the time the suit was brought, no administration, and it was alleged that there was no necessity for one.

John B. and Elizabeth Reed moved to Texas in 1850, then being man and wife.

John B. Reed died on the 8th of November, 1871. He left surviving him his widow, Elizabeth, and ten children, and one set of grandchildren, issue of a deceased son. He left, as community estate between himself and his wife Elizabeth, one thousand one hundred and thirty-seven acres of land, and some personal estate, consisting of horses, cattle, hogs, money, &c.

On the 9th of June, 1872, the appellants began this suit, on the regular District Court docket, alleging that they were heirs of John B. Reed by a former wife; that he left a large real and personal estate, which was community between himself and his wife Elizabeth; that the widow had taken exclusive possession of the property, without administration regularly commenced, or by compliance with the community law, and was claiming the estate exclusively for herself and her six children, denying appellants any claim therein. They pray for partition and distribution of the estate according to law, and make the widow and her children defendants to the suit.

The defendants answered, denying that plaintiffs had any interest in the estate of John B. Reed, alleging that the father, in his life, had made such advancements to each of them as would preclude them from any further interest in his estate.

Before the trial, two of the plaintiffs withdrew from the suit, and the case went to trial as to the other three. These

three admitted by their pleadings that they had received advancements, and offered to bring them into hotchpot.

After the answer was filed, Mrs. Reed filed an inventory under the community law. The petition having admitted that the property was community estate, there could arise no question on the trial as to whether or not the land was separate estate.

The plaintiffs offered evidence tending to show that there was separate estate, and they also asked instructions of the court—as, if the jury could determine whether or not any of the property was separate estate.

The question of separate property, under the pleadings, could certainly not have applied to any of the property, except the negroes that were given to the children as advancements. On that subject the court charged the jury that, if the first wife held said negroes as her separate property, by the laws of Mississippi, the gift of them to her children would not be an advancement which they were required to account for in this suit.

The real matters in controversy were, whether or not the deceased, John B. Reed, left a large amount of money, twenty or twenty-five thousand dollars, which had come into the possession of the widow and her children, who were defendants, and whether the land was worth ten dollars per acre, or twenty or twenty-five dollars per acre. For, if there were only two thousand two hundred and fifty dollars left by the deceased, as proved by the defendants, and the land (one thousand one hundred and thirty-seven acres) on which the homestead was situated was worth only ten dollars per acre, according to the evidence adduced by the defendants, then there was not an amount of property left by John B. Reed more than sufficient to furnish portions to the children of the second marriage, if there was enough, after satisfying the community interest of the widow and making the necessary deduction of the homestead and other exempted property, which was not, under the law, subject to distribution.

This being certain from the evidence, as it is presented in the record, it would hardly be necessary to consider the question, upon the charge of the court, as to the time when the value of the land advanced to the children was to be estimated. For if the land was given, as an advancement, before John B. Reed paid (about) five dollars per acre for it in 1865, certainly the amount then paid for the land, previously given to his children, to perfect his title, would be an advancement. The evidence is very uncertain about the gift of the land to the children before he had a deed to the land in 1865. If the plaintiffs had relied upon a verbal gift, and delivery of possession by their father, and valuable improvements thereon made by themselves, previous to the time when he made them deeds to such lands, evidence should have been adduced which would have more specifically established those facts, and, in the absence of it, the court cannot be held to have erred, in fixing upon the making of the deeds of conveyance to the land as the time when it should be considered as an advancement.

The exceptions taken to the evidence of the widow, and of her son, that they were allowed to speak of payments made by them, without producing the receipts upon the trial, is not a material error. Payments can be proved without producing the receipt. But if she was held accountable for all the money thus shown to have been paid out, it does not appear that it would or could have altered the result.

The minor matters being thus disposed of, the main question remains to be considered, which is, did the evidence on the trial so far preponderate in favor of the plaintiffs, as to the large amount of money coming into the hands of the widow, and as to the land being worth twenty instead of ten dollars per acre, that this court would be justified in setting aside the verdict rendered for the defendants? We think not. The evidence was directly conflicting upon both points.

Counsel for plaintiffs in error complain that the statement of facts does not fully state their case. That is the misfortune

of their clients, if it be so, which cannot be relieved in this court. We can only act upon the record as it is here presented. The evidence is not only conflicting, but each side may be said to be very well sustained upon both of the main points in controversy.

Under such circumstances, this court cannot disturb the verdict.

. Judgment affirmed.

AFFIRMED.